UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VINCENT THOMAS,

    Plaintiff,

v.       CAUSE NO. 3:23cv223 DRL

MICHIGAN CITY AREA SCHOOLS,

    Defendant.

OPINION AND ORDER

Vincent Thomas, proceeding *pro se*, alleges his former employer, Michigan City Area Schools (MCAS), discriminated against him in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA). MCAS moves for summary judgment, and the court grants it.

BACKGROUND

The following facts are those established by the summary judgment record, as viewed in the light most favorable to Mr. Thomas. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 710 (7th Cir. 2017). He didn't file evidence or respond to MCAS's statement of material facts, so the court treats MCAS's facts as undisputed today. *See* Fed. R. Civ. P. 56(e)(2); *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011).

Mr. Thomas, a 78-year-old Black man, began work as a bus driver for MCAS in December 2004 [57-2 at 3, 54; 57-3 at 2]. He resigned and was rehired several times over the ensuing years and was most recently rehired in September 2017 [57-1 at 51].

Before the fall 2022 semester, Mr. Thomas underwent a medical examination certifying to MCAS his fitness to drive a school bus [57-3 at 1]. He told the examiner that he had diabetes or blood sugar problems and was prescribed medication [*id.* at 2-3].

MCAS assigns bus monitors to accompany drivers on some routes [57-11 ¶ 5]. Monitors are only required for routes containing all special needs students [*id.* ¶ 6]. During the fall 2022 semester, and though he didn't drive a special needs route, Mr. Thomas was at one time or another accompanied on his bus route by four different bus monitors, each of whom was qualified and performed adequately [*id.* ¶ 7(b), (c), (j)]. Mr. Thomas was first paired with Grady Hood, another Black man, but Mr. Hood asked to be reassigned due to personal issues with Mr. Thomas [*id.* ¶ 7(d), (e)]. Next, Mr. Thomas was paired with Abraham Gomez, who soon after left MCAS due to health issues [*id.* ¶ 7(f)]. His third monitor was Donna Fox, who took a leave of absence due to health issues [*id.* ¶ 7(g)]. Last, he was paired with Jeanette Gaines, his monitor through his final day of employment [*id.* ¶ 7(h), (i)].

During the fall 2022 semester, Mr. Thomas received complaints about his driving. On August 30, 2022, Safety Manager Valorie Skwiat observed Mr. Thomas driving 37 mph in a 30 mph zone [57-4]. She also saw Mr. Thomas open the bus door and extend the "stop" arm signal before bringing the bus to a complete stop, as required under MCAS policy and Indiana law [*id.*; 57-5 at 1]. *See* Ind. Code § 9-21-12-13.

On September 2, 2022, a parent called MCAS to report that their child complained Mr. Thomas drives too fast and the child didn't feel safe [57-6]. Ms. Skwiat confirmed with the bus vehicle report that Mr. Thomas was speeding [*id.*]. She spoke with him and asked him to take corrective action [*id.*].

2

On November 11, 2022, Mr. Thomas missed a student's stop and didn't notice until the student alerted him [57-11 ¶ 7(l)]. Mr. Thomas activated the flashing lights while he slowed the bus but deactivated them before the student exited [*id.*]. As the student exited the bus, Mr. Thomas had no warning, hazard, or flashing lights activated, nor did he extend the "stop" arm, and he allowed the student to exit the bus down the passenger side, leaving the student in a blind spot to oncoming traffic [*id.*]. This was contrary to MCAS policy and Indiana law [57-5 at 1-2]. Ind. Code. §§ 9-21-12-13, 9-21-12-15. As the student crossed the street, an oncoming vehicle had to rapidly decelerate to avoid hitting the student [*id.*]. The incident was reported to MCAS by the student's parent and a Michigan City police officer who was driving behind the bus, and it was confirmed later by the bus's onboard video [*id.*].

Around the time of the November 11, 2022 incident, an employee notified MCAS that Mr. Thomas was frequently urinating in the MCAS transportation parking lot following his bus route, in view of others [57-11 ¶ 7(m)]. Security footage of the lot from September 19, September 23, and October 6, 2022 may be difficult to interpret, but Mr. Thomas admits he urinated in the parking lot on those dates and that he had access to bathrooms in the transportation department buildings next to the lot, near where he frequently disposed of trash collected from his bus during his final walkthroughs [60 ¶ 25, 25 n.1].

On November 14, 2022, Mr. Thomas was placed on paid administrative leave pending the outcome of an investigation [57-7]. He was summoned to a meeting on November 17, 2022 to discuss his employment with MCAS and his failure to follow district policies, as provided in his union contract; when he failed to show, it was rescheduled to November 29, 2022 [57-8; 57-9]. MCAS terminated Mr. Thomas on December 13, 2022 [57-10].

3

On March 20, 2023, Mr. Thomas sued MCAS alleging discrimination in employment based on race (including reverse discrimination), age, gender, sex, religion, and disability, in violation of Title VII of the Civil Rights Act, the ADEA, and the ADA. On March 23, 2023, MCAS moved to dismiss the complaint. Mr. Thomas later filed a copy of his right-to-sue letter from the EEOC, issued on May 4, 2023. The court deemed the complaint amended with the right-to-sue letter and denied MCAS's motion to dismiss. Discovery lasted from November 14, 2023 through January 10, 2025, during which time Mr. Thomas stated his desire to conduct certain depositions. Though the court provided him procedural guidance and encouraged him to act by the deadline, he didn't conduct depositions before discovery closed. On December 17, 2024, MCAS moved for summary judgment. Mr. Thomas responded after notice.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on

the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

A. *Title VII and ADEA.*

Title VII makes it unlawful for a qualifying employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's race, . . . religion, [or] sex." 42 U.S.C. § 2000e-2(a)(1). The law uses a holistic approach that poses a singular question at summary judgment: whether the evidence would permit a reasonable factfinder to conclude that Mr. Thomas's race, religion, or sex caused his termination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The court considers the evidence as a whole. *Id.*

The ADEA protects workers 40 years of age and older from age-based employment discrimination. *See* 29 U.S.C. § 623(a)(1); *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). It prohibits the discharge or another adverse employment action "because of such individual's age," 29 U.S.C. § 623(a)(1), but "it does not protect older employees from being fired for legitimate reasons," *Glover v. U.S. Healthworks*, 326 F. Appx. 964, 967 (7th Cir. 2009). Age must be the but-for cause for the adverse action. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176 (2009). "[I]t's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Wrolstad*, 911 F.3d at 454 (citation and quotations omitted). The law uses a holistic approach here too: whether the evidence would permit a reasonable factfinder to conclude that Mr. Thomas's age was the cause of his

5

termination. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367-68 (7th Cir. 2019). The court considers the evidence as a whole. *Id.*

Here, there is no evidence in the record that would permit a factfinder to conclude that race, religion, sex, or age caused Mr. Thomas's termination. There are no MCAS statements or actions suggesting Mr. Thomas experienced animus due to a protected characteristic. MCAS didn't treat him less favorably than a similarly situated employee of a different race, religion, sex, or age.[1] For a reasonable jury, the only conclusion the evidence supports is that he was fired for his failure to follow MCAS policies and Indiana law concerning procedures for ensuring student safety along a bus route. This included speeding, opening the door before coming to a complete stop, failing to extend the "stop" arm or use warning, hazard, or flashing lights, and failing to ensure a student safely crossed the road [57-4; 57-6; 57-11 ¶ 7(l)].

Mr. Thomas says he was discriminated against because white bus drivers were assigned well-qualified bus monitors while he was given unqualified monitors. But a factfinder couldn't decide that Mr. Thomas was discriminated against with respect to his terms, conditions, or privileges of employment based on the assignment of bus monitors. The assignment of bus monitors isn't a severe or pervasive change in the conditions of employment that is actionable under Title VII or the ADEA. *See Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 660-61 (7th Cir. 2005) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (Title VII); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989) (ADEA doesn't cover "changes in duties or working conditions that cause no materially significant disadvantage to an older employee"). It isn't akin to lower pay, a significant change in employment status (being hired,

---

[1] Notably, Mr. Thomas's religion isn't in the record.

fired, overlooked for promotion, or reassigned with significantly changed responsibilities), or a decision causing a significant change in benefits or employment conditions. *See id.* at 660 (quoting *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 743-45 (7th Cir. 2002) (collecting cases finding that Title VII protects certain terms, conditions, or privileges of employment). Even if it were, considering the evidence as a whole, the monitors on his routes were qualified, performed adequately, and left either for personal reasons or because they had personal issues with Mr. Thomas. There is nothing on this record that shows to a reasonable jury that these monitors were placed with Mr. Thomas because of unlawful animus. Accordingly, Mr. Thomas can't show he was deliberately assigned poor monitors or stripped of effective ones because of a protected characteristic.

With no evidence that MCAS discriminated against Mr. Thomas because of his race, age, sex, or religion, MCAS must be granted summary judgment on the Title VII and ADEA claims.

B.  *ADA.*

The ADA exists to eliminate "discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It applies to qualified individuals "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the Act, an employer may not discriminate "against a qualified individual on the basis of disability in regard to [the] discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove a violation, Mr. Thomas must show he is disabled, he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, he suffered an adverse employment action, and the adverse action was caused by his disability. *See Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022). These elements aside, what matters is whether

the evidence considered as a whole permits a reasonable factfinder to conclude Mr. Thomas's disability caused his discharge or other adverse employment action. *Id.* (quoting *Ortiz*, 834 F.3d at 765).

It is undisputed that Mr. Thomas's diabetes is a legal disability and undisputed that he was qualified to be a bus driver. But he can't show he wasn't accommodated or that he experienced an adverse employment action because of his diabetes. To a reasonable jury, Mr. Thomas was fired for failing to ensure student safety on his bus route based on MCAS policies and Indiana law. He doesn't say he couldn't hold his urine due to his diabetes and was instead terminated for micturating in the parking lot, but such an argument wouldn't salvage his claim. MCAS provided bathrooms near the lot, next to where Mr. Thomas would regularly throw away trash, and he doesn't suggest accessing these facilities was burdensome given his condition [60 ¶ 25 n.1]. Likewise, even assuming the assignment of bus monitors could constitute an adverse employment action, there is no evidence that assignments were influenced in any way by his having diabetes.

No evidence in the record supports that Mr. Thomas was discriminated against due to his disability. The court must grant MCAS summary judgment on the claim.

## CONCLUSION

For these reasons, the court GRANTS MCAS's summary judgment motion [57] and DIRECTS entry of judgment for MCAS. This order terminates the case.

SO ORDERED.

June 5, 2025                                    *s/ Damon R. Leichty*
                                                Judge, United States District Court